# EXHIBIT A



October 18, 2018

Scott Corning
Senior Vice President, Commercial
Ocular Therapeutix, Inc.
15 Crosby Drive
Bedford, Massachusetts 01730
scorning@ocutx.com

Jonathan Sparks
McCarter & English
265 Franklin Street
Boston, Massachusetts 02110
jsparks@mccarter.com

Re: Meeting to discuss patent issues

Dear Scott and Jonathan:

I write to follow up on my recent discussion with Scott about Ocular Therapeutix's "Dextenza" intracanalicular insert infringing several patents owned by Mati Therapeutics. I'd also like to propose that we get together in person to discuss the issue in more depth during the AAO conference in Chicago.

When Scott and I last spoke, I suggested he review Mati's publicly available patent information. In particular, please take a close look at the enclosed U.S. Patents Nos. 9,849,082 (e.g., claim 1), 9,463,114 (e.g., claim 1), and 7,922,702 (e.g., claim 15), all owned by Mati. These patents, which pertain to intracanalicular drug delivery systems, would be infringed by the commercial launch of Dextenza. Mati also has additional patents and applications pending in the United States and in major markets abroad that are implicated by Dextenza.

Mati has invested significantly in its innovations and its patent portfolio over the years, and takes its IP rights seriously. Nonetheless, we would like to avoid a disruptive, expensive patent dispute with Ocular Therapeutix over Dextenza. We would prefer to approach this situation as an opportunity for both companies, in which Ocular stands to gain valuable and necessary intellectual property rights while Mati is fairly compensated for the use of its patented inventions.

We will be in Chicago for the AAO meeting next week, and we understand that Ocular Therapeutix will be attending as well. Our outside counsel Gabe Gross, copied here, has offered us the use of the Latham & Watkins offices (at 330 North Wabash Avenue) so that we can meet confidentially and in person to discuss this matter further. We are available on Friday, October 26 at 10:00 a.m., and invite you and your counsel to meet us there. Please confirm that this time works for you, or propose some others and we

will do our best to accommodate your schedule.  We look forward to working with you to arrive at a business solution that delivers value to both companies.

Yours,

Bob Butchofsky

Encls.
cc:     Gabe Gross

# EXHIBIT B



October 25, 2018

VIA E-MAIL

Gabriel S. Gross, Esq.
Latham & Watkins, LLC
140 Scott Drive
Menlo Park, CA 94025
gabe.gross@lw.com

Re:  Mati Therapeutics Patents

Erik Paul Belt
Partner
T. 617-449-6506
F. 617-607-6035
ebelt@mccarter.com

McCarter & English, LLP
265 Franklin Street
Boston, MA  02110-3113
T. 617.449.6500
F. 617.607.9200
www.mccarter.com

Dear Gabe:

I believe that you represent Mati Therapeutics.  Ocular Therapeutix has retained my firm, McCarter & English, to respond to the patent infringement allegations that Mati made against Ocular in a letter from Mati's CEO, Bob Butchofsky, dated October 18, 2018.  Please address any further communications on this matter to me.

We have reviewed the three Mati patents referenced in the October 18th letter and conclude that either they are invalid, not infringed, or both.  Indeed, it appears that the necessary analysis required to establish a good faith belief that Mati patents would be infringed by the Dextenza® insert has not been done.  Based on Ocular's preliminary analysis to date, and without limiting additional or different arguments that Ocular may make later, here are summaries of Ocular's defenses to Mati's allegations of infringement of the three patents.

### U.S. Patent No. 7,922,702 ("the '702 Patent")

In the letter, Mati has asked Ocular to look in particular at Claim 15 of the '702 Patent.  Claim 15 provides as follows.

15.  A device comprising:

a first portion configured for insertion into a punctum of a mammalian eye and retention by a single lacrimal canaliculus of the eye;

a second portion retained on or in the first portion, the second portion including an at least partially encapsulating jacket or a coating; and

a treatment medium carried by the second portion, wherein the second portion releases the treatment medium to the eye.

The '702 Patent illustrates a preferred embodiment of the claimed two-portion device as follows.  In this illustration (Figure 2A from the patent), the claimed "first

BOSTON

HARTFORD

STAMFORD

NEW YORK

NEWARK

EAST BRUNSWICK

PHILADELPHIA

WILMINGTON

WASHINGTON, DC

October 25, 2018
Page 2

portion" is identified as the tube numbered 110, while the claimed "second portion" is identified as the cap numbered 120.  All other embodiments described in the patent also consist of two different structures or materials fitted or bonded together.



Fig. 2A

According to the claims and the specification, the claimed "second portion" is the structure that carries and then releases the 'treatment medium."  The patent specification defines the "treatment medium" as, for example, "analgesics, an antibiotic or a medicament or medium used for treating dry eye condition. . . ." '702 Patent at 9:2-8.

Assuming that the FDA approves Ocular's Dextenza® insert for commercial launch, it would, upon launch, not infringe Claim 15 or any other claim of the '702 Patent.  In particular, Ocular's Dextenza® insert does not include a "second portion," as recited in Claim 15.  Instead, the insert comprises a single structure consisting of a hydrogel insert with dexamethasone dispersed throughout. The insert is depicted below.



As one can see from this illustration, the insert has no second portion that is "retained on or in" the hydrogel insert, let alone a second portion that carries and releases the "treatment medium."  Nor does it have a second portion that includes

October 25, 2018
Page 3

an "encapsulating jacket or a coating," as Claim 15 requires.  Furthermore, to the extent that dexamethasone may be considered as the "treatment medium," all of it is contained within the one and only structure—namely, the hydrogel insert—rather than in a second structure.

Because all other claims of the '702 Patent require a "second portion" that caries the treatment medium, the Dextenza® insert cannot possibly infringe any other claim of the '702 Patent.

If you disagree and have a good faith reason to believe that the Dextenza® insert infringes, please provide a detailed claim chart with supporting evidence explaining the alleged infringement.

## U.S. Patent No. 9,849,082 ("the '082 Patent")

In the October 18th letter, Mati has accused Ocular of infringing Claim 1 of the '082 Patent.  Claim 1 provides as follows.

> 1. A drug delivery system for insertion into a lacrimal canaliculus of a patient, comprising:
>
> a therapeutic agent, a distinguishing color to show placement of the system in the lacrimal canaliculus of the patient and a body of material to hold the therapeutic agent wherein the body of material comprises hydrogel polymers and wherein the body of material is a cylindrical rod.

Claim 1, however, is invalid and, indeed, a prime candidate for *inter partes* review ("IPR") in the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office.

More specifically, the prosecution history of this patent shows that the then-pending claims were initially rejected as being anticipated by, or obvious in view of, certain prior art.  Mati overcame this rejection by amending the claims to include a "distinguishing color" limitation, as seen in the following excerpt from the prosecution history. The amendment is the underlined portion.

October 25, 2018
Page 4


1.      (Currently Amended) A drug delivery system for insertion into a lacrimal canaliculus of a patient, comprising:

a therapeutic agent, a distinguishing color to show placement of the system in the lacrimal canaliculus of the patient and a body of material to hold the therapeutic agent wherein the body of material comprises hydrogel polymers and wherein the body of material is a cylindrical rod.

Amendment to Claims, August 7, 2017.

Moreover, as seen in the following excerpt from the prosecution history, Mati specifically argued that this amendment--and this amendment alone--distinguished the prior art:

The subject matter of claims 11 and 25, wherein the drug delivery system comprises "…a distinguishing color to show placement of the system in the lacrimal canaliculus of the patient" was not included in the instant art rejections and hence is free of the art.  The subject matter of those claims was incorporated into claims 1 and 19, respectively.  Moreover, claim 12 recites that same language.  The references relied upon by the Office Action do not expressly or inherently disclose a drug delivery system for insertion into a lacrimal canaliculus of a patient comprising or consisting essentially of "…a distinguishing color to show placement of the system in the lacrimal canaliculus of the patient".

Response to Office Action, August 7, 2017.

Use of a distinguishing color with intracanalicular inserts and hydrogels, however, was well known in the prior art.  Had the examiner been aware of this prior art, he never would have allowed the patent. As just one example, using colors to enhance the ability to detect an intracanalicular implant was known in the art at least as early as 2002:

The standard intracanalicular silicone implants will exist but have undergone "cosmetic surgery" and now come in colors to enhance our ability to detect their presence after insertion.

Scot Morris, O.D., F.A.A.O., *A Lesson in Managing Dry Eye, Plugs, Drugs and Teams:  A Dry Eye Update, Part Two*, Optometric Management, October 2002 (emphasis added).[1]

---

[1]  *See* https://www.optometricmanagement.com/issues/2002/october-2002/a-lesson-in-managing-dry-eye

October 25, 2018
Page 5


One of ordinary skill in the art at the time that the '082 Patent was filed would have known to combine colors with hydrogel inserts. Indeed, the PTAB has already determined as much when it instituted an IPR on a patent directed to related technology. To wit:

> An ordinarily skilled artisan, therefore, wanting to visualize the hydrogels of either Rhee reference during use, would reasonably look to Bass for its teaching of chromophores as visualization agents for medical applications.  Indeed, Bass specifically claims methylene blue as a specific chromophore that "allow[s] visualization of the composition." . . .

> . . . We are instead persuaded by Petitioner's explanation that visualization agents have been used in polymeric materials for medical applications for many years, and that an ordinarily skilled artisan seeking to visualize the newer-generation hydrogels would reasonably look to the visualization agents previously employed in other biocompatible polymers used to coat tissues during surgical operations. . . .

> . . . And we note that Petitioner's reasonable-expectation-of-success argument relies on the testimony of Dr. Lowman. See, e.g., Ex. 1003 ¶¶ 89-90 (testimony of Dr. Lowman that "given the disclosures in Bass (and the general knowledge of color additives in polymers), a POSA would have every reason to expect success in combining the hydrogels of Rhee '500 with the visualization agents of Bass to produce colored hydrogels").

*HyperBranch Medical Technology, Inc. v. Incept LLC*, Case IPR2016-01836, Institution Decision at 21-22 (PTAB, Apr. 4, 2017).

Given that allowance of the '082 Patent was expressly based on the "distinguishing color" limitation, given the strong prior art disclosure of the use of colors with intracanalicular implants and hydrogel medical devices, and given that the PTAB has already once determined that the combination of a distinguishing color with hydrogel medical devices for ophthalmic use would have been obvious, Ocular will not hesitate to prepare and file an IPR petition to challenge the validity of the '082 Patent should Mati persist in its infringement allegations.

October 25, 2018
Page 6

**U.S. Patent No. 9,463,114 ("the '114 Patent")**

Finally, Mati has asked Ocular to consider Claim 1 of the '114 Patent. Claim 1 is directed to the following method:

> 1.  A method for administering an active agent to a subject using a punctal plug, the method comprising:
>
> Inserting the punctal plug into a punctal aperature of the subject, wherein the composition of the punctal plug comprises:
>
> a) an active agent selected from the group consisting of topical prostaglandin; latanoprost; travoprost; bimatoprost; a medication for treatment of a corneal infection; ciprofloxacin; moxifloxacin; gatifloxacin; a systemic medication; a medication for treating hypertension; atenolol; nifedipine; hydrochlorothiazide; and a medication for treating allegoric conjunctivitis, and
>
> b) a porous or absorbent material, and
>
> wherein the shape of the punctal plug consists of a constant diameter cylinder configured to be inserted into a canalicular puncta of the subject.

Review of the prosecution history for the '114 Patent shows that, to overcome prior art rejections, Mati amended the claims to require that the shape of the claimed punctal plug be a "constant diameter cylinder." *See, e.g.*, Amendments to Claims dated October 27, 2015; April 12, 2016; and June 1, 2016.  Relying on these amendments, the examiner allowed the '114 Patent on the mistaken belief that the prior art punctal plugs all included a flange or portion that remains outside the puncta and thus using a cylindrical plug would not have been obvious:

October 25, 2018
Page 7

2.      The following is an examiner's statement of reasons for allowance: The previously applied for the drug releasing body had a different intended and the prior art does disclosed insertion of the drug releasing implant into the punctal aperture of a subject. The punctual plugs of the prior art all contain some sort of flange of portion of greater diameter than the body of the plug that is larger than the puncta such that the body of the punctal plug is contained within the punctual aperture but a portion remains outside due to the greater diameter of this portion (e.g., parts **28** and **28'** of Freeman US 3,949,750 and parts **26** or **40** in Cohan US 6,196,993). The punctal plugs often also contain a wider portion at the other end of the plug, such as parts **22** and **22'** in Freeman US 3,949,750 and parts **28** or **38** in Cohan US 6,196,993). US 4,660,546 discloses a tapered cylinder that is inserted into the canaliculus and not the punctum of the eye (see figure 2 and figure 3). Therefore the insertion of cylindrical drug releasing implant of constant diameter for the entire length without a flange or other portion of greater diameter into the punctum of a subject is non-obvious.

Reasons for Allowance, June 10, 2016.

Even a cursory review of the prior art, however, reveals numerous cylindrical punctal plugs of constant diameter, as seen below  Had the examiner considered and applied this prior art, she would not have allowed the claims.  This prior art-- alone or in combination with other prior art (such as the Freeman or Cohan references cited by the examiner in the above excerpt)--provides ample ammunition for an IPR petition challenging the validity of the '114 Patent.

For example, Published Application No. US 2005/0095269 to Ainpour *et al.* ("Ainpour") discloses a "cylindrical plug for insertion through the punctum and into the canaliculus."  Abstract.  Ainpour specifies that the "preferred shape is cylindrical for ease of insertion through the punctal opening."  Para. 0041.  An illustration of the Ainpour plugs is shown below.



**FIG 5**

October 25, 2018
Page 8

Ainpour describes Figure 5 as a "rod" or a "cylindrical" shape. *See* Para. 0041. Clearly, as seen above, it also has a constant diameter.

Ainpour, in combination with the Freeman '750 Patent cited by the examiner, or in combination with numerous other prior art references disclosing the delivery of active agents via punctal plugs, would render the claim of the '114 Patent obvious. Indeed, Ainpour specifically points to the Freeman '750 Patent. *See* Ainpour at Para. 005 ("Plugs made of silicone elastomer . . . and other more permanent materials which are designed to be retained in the punctal opening are disclosed in several patents, <u>U.S. Pat. No. 3,949,750 to Freeman</u> being an example of these devices") (emphasis added)  Accordingly, one of ordinary skill would have been motivated to combine Ainpour with Freeman or similar prior art to make the device now claimed in the '114 Patent.  *See, e.g.*, *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1328 (Fed. Cir. 2004) (because first prior art reference discussed a second reference, the jury could reasonable have found that one of ordinary skill would have been motivated to combine the two references).

Other prior art references also disclose cylindrical punctal plugs of constant diameter.  For example, Published Application No. US 2005/0197614 to Pritchard *et al.* ("Pritchard") discloses cylindrical plugs of constant diameter as shown in Figures 7A and 7B below:



Pritchard also discloses that plugs can be made from "a hydrogel material" by extruding, stretching, and then cutting them "into <u>small cylinders</u> for easy insertion into a duct or canal."  Pritchard, Para. 0066 (emphasis added).

Pritchard is particularly notable because it also teaches that the cylindrical plugs could be used to deliver therapeutic agents.  To wit:

October 25, 2018
Page 9

**[0131]** Drug and Therapeutic Agent Delivery

**[0132]** The gels and other devices set forth herein could contain medicaments, therapeutic agents, antimicrobials (e.g., silver), bioactive minerals and glasses, radioactive therapeutic materials, cytotoxic agents (for tissue ablation), etc. The gel would entrap active therapeutic agents at the site where the gel is formed in a patient, or could slowly elute therapeutic agents into the patient, e.g., into the bloodstream or other tissues. Various therapeutic agents are described in commonly owned and copending U.S. Provisional Application No. 60/550,132, entitled "Punctum Plugs, Materials, And Devices", and may be combined with the gels and devices described herein.

Thus, given this teaching, Pritchard either anticipates Claim 1 of the '114 Patent or, at least, renders it obvious.

Another prior art reference, International Pub. No. WO 02/11783 to Zhou *et al.* likewise discloses cylindrical plugs of constant diameter, as seen in Figure 6 below.



Like Ainpour, Zhou also specifically points to the Freeman '750 Patent. See Zhou at p. 3, ll. 11-21 ("Water-insoluable plugs which can be placed in the punctum openings and into vertical sections of the canicular canals are disclosed in U.S. Patent 3,949,750, Freeman, issued April 13, 1976. The punctum plug of Freeman is a rod-like plug formed with an oversized tip . . . "). As such, one of ordinary skill in

October 25, 2018
Page 10

the art would have been motivated to combine the cylindrical plug of Zhou with the medication delivery system of Freeman.

* * *

The arguments summarized above are based on only a preliminary review, but further analysis would likely reveal additional arguments.  In any event, these preliminary arguments are powerful indications that Mati's patents are either not infringed or are at substantial risk of being invalidated, whether in a court proceeding or an IPR in the PTAB.  Accordingly, should Mati persist in its accusations, Ocular will not hesitate to take appropriate defensive measures to invalidate Mati's patents and to prove that it does not infringe.

Sincerely,

Erik Paul Belt

cc:   Antony Mattessich, CEO
      Jonathan Sparks, Ph. D., J.D.

# EXHIBIT C

**Gabriel S. Gross**
Direct Dial: +1.650.463.2628
gabe.gross@lw.com

140 Scott Drive
Menlo Park, California 94025
Tel: +1.650.328.4600 Fax: +1.650.463.2600
www.lw.com

**LATHAM & WATKINS** LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Seoul |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

File No. 05224-0005

November 1, 2018

**VIA EMAIL**

Erik Paul Belt
McCarter & English
265 Franklin Street
Boston, Massachusetts 02110
ebelt@mccarter.com

Re:    Ocular Therapeutix's patent infringement

Dear Mr. Belt:

We have your letter of October 25, which you wrote in response to our client Mati Therapeutics' concerns about Ocular Therapeutix infringing at least three patents by commercially launching its "Dextenza" product. After we received your letter, our clients' chief executives met in person while both were in Chicago, at the urging of Mati's CEO Bob Butchofsky. We understand that Ocular's CEO Mr. Mattessich made clear in that meeting—which lasted all of ten minutes—that Ocular would not engage in a substantive discussion about this dispute or make any good faith efforts to try to resolve it. Frankly, Mati was surprised that Ocular would refuse to negotiate and that it is willing to launch Dextenza well aware of the multiple infringement problems Mati brought to its attention.

In your letter, you assert that Ocular concluded it does not infringe Mati's patents, or that the patents are invalid, or both. We have reviewed your "summaries of Ocular's defenses" and we disagree entirely with the conclusions you and your client hastily reached. The invalidity arguments you raised are the same as or similar to those that Mati overcame when it prosecuted these patents at the patent office. Indeed, you even rely on some of the same prior art the Patent Office considered before it allowed Mati's patents, which now are entitled to a legal presumption of validity. And Ocular's singular non-infringement position with respect to the '702 patent reflects that Ocular is either misconstruing or else fundamentally does not understand Mati's inventions and the scope of the patent claims. Notably, Ocular has not even argued that it does not infringe Mati's '082 and '114 patents, nor has it argued that the '702 patent is invalid.

You invited us to "provide a detailed claim chart" to further explain Ocular's infringement. Although we suspect Ocular has no real need for such assistance in understanding its infringement, Mati would be glad to provide you with claim charts if doing so will help bring our clients closer to resolving this issue. To that end, we already have twice provided you with a proposed confidentiality and non-use agreement, the purpose of which is to facilitate a good-faith, confidential negotiation between our clients. Ocular has not responded. If Ocular is

Erik Paul Belt
November 1, 2018
Page 2

**LATHAM & WATKINS** LLP

serious about working towards resolving this dispute, please sign and return to me a copy of that agreement, and Mati will provide you with claim charts so our clients may begin a more productive discussion.

In the meantime, Mati stands by its infringement positions and will continue to expand its patent portfolio to protect its innovations in this country and abroad.

Very truly yours,

Gabriel S. Gross
of LATHAM & WATKINS LLP

cc:     Bob Butchofsky

# EXHIBIT D

**Gabriel S. Gross**
Direct Dial: +1.650.463.2628
gabe.gross@lw.com

140 Scott Drive
Menlo Park, California 94025
Tel: +1.650.328.4600  Fax: +1.650.463.2600
www.lw.com

## LATHAM&WATKINS LLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Beijing | Moscow |
| Boston | Munich |
| Brussels | New York |
| Century City | Orange County |
| Chicago | Paris |
| Dubai | Riyadh |
| Düsseldorf | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Seoul |
| Houston | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |

December 4, 2018

File No. 052204-0005

**<u>VIA EMAIL</u>**

Erik Paul Belt
McCarter & English
265 Franklin Street
Boston, Massachusetts 02110
ebelt@mccarter.com

Re:   <u>Ocular Therapeutix's patent infringement</u>

Dear Mr. Belt:

We write again regarding Ocular's commercialization of "Dextenza," which infringes at least three of Mati Therapeutics' patents, namely U.S. Patent Nos. 9,849,082 (e.g., claim 1), 9,463,114 (e.g., claim 1), and 7,922,702 (e.g., claim 15).  Despite our attempts to resolve this issue, we have yet to hear from you since our clients' CEOs met in person in October.  At their meeting, Ocular's Mr. Mattessich made clear he would not engage in a substantive discussion about this dispute or make any good faith efforts to try to resolve it.  As you know, we reviewed the defenses you described in your October 25 letter, before the CEOs met.  We find those arguments unavailing, and note that Ocular has not even contested that it infringes the '082 and '114 patents.

Yesterday, Ocular announced that the FDA has approved Dextenza for the treatment of ocular pain following ophthalmic surgery.  According to Mr. Mattessich, Ocular is working on "the successful commercial launch of DEXTENZA."  While Ocular may have been attempting to rely on the "safe harbor" of 35 U.S.C. § 271(e)(1) to avoid liability for patent infringement while it was seeking FDA approval, no such defense applies to its commercialization of the product going forward.  Ocular's post-approval conduct, namely any making, using, selling, offering to sell, or importing of Dextenza, willfully infringes Mati's patents.

We remain available to discuss and work towards resolving these issues with you.  We suggest, for the third time, that you sign and return to us the confidentiality agreement we provided, to facilitate a good faith, confidential negotiation between our clients.

December 4, 2018
Page 2

**LATHAM&WATKINS** LLP

     In the meantime, Mati stands by its infringement positions and will continue to expand its patent portfolio to protect its innovations in this country and abroad.

Very truly yours,

Gabriel S. Gross
of LATHAM & WATKINS LLP

cc:    Bob Butchofsky

# EXHIBIT E

**Proctor, Wyley**

| | |
|---|---|
| **From:** | Silver, Daniel |
| **Sent:** | Thursday, January 17, 2019 5:06 PM |
| **To:** | Kelly Farnan (Farnan@RLF.com) |
| **Cc:** | Belt, Erik Paul; Lemon, Brian |
| **Subject:** | Ocular v. Mati -- Mati's Request for Another Extension |

Kelly,

In December, you asked for a 30-day extension on behalf of Mati.  We agreed to 14 days.  This week, you and your co-counsel indicated that you were planning to move for another 14-day extension because we will not agree to another extension.  In order to avoid motion practice, we are willing to stipulate to extend Mati's response deadline to January 28th.  If Mati declines to accept that stipulation, we will oppose the motion for an extension (and of course, Mati's deadline to respond is not extended unless and until the Court grants any motion that Mati files).  Please let us know what Mati decides.

Thank you and best regards,
Dan



**Daniel Silver | Partner**
McCARTER & ENGLISH, LLP

Renaissance Centre, 405 N. King Street, 8th Floor | Wilmington, Delaware 19801
T: 302-984-6331
C: 814-571-1414
F: 302-691-1260
dsilver@mccarter.com | www.mccarter.com

BOSTON | HARTFORD | STAMFORD | NEW YORK | NEWARK
EAST BRUNSWICK | PHILADELPHIA | WILMINGTON | WASHINGTON, DC

**Think Green! Please consider the impact on the environment before printing this e-mail.**

# EXHIBIT F

**Belt, Erik Paul**

---

| | |
|---|---|
| **From:** | ded_nefreply@ded.uscourts.gov |
| **Sent:** | Thursday, June 26, 2008 3:51 PM |
| **To:** | ded_ecf@ded.uscourts.gov |
| **Subject:** | Activity in Case 1:08-cv-00348-GMS Samsung Electronics Co. Ltd. v. Petters Group Worldwide LLC et al Set/Reset Answer Deadline(s) |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

## U.S. District Court

### District of Delaware

**Notice of Electronic Filing**

The following transaction was entered on 6/26/2008 at 3:51 PM EDT and filed on 6/26/2008
**Case Name:**         Samsung Electronics Co. Ltd. v. Petters Group Worldwide LLC et al
**Case Number:**       1:08-cv-348
**Filer:**
**Document Number:** No document attached

**Docket Text:**
**Reset Answer Deadlines: Petters Group Worldwide LLC answer due 7/30/2008; Polaroid Corporation answer due 7/30/2008. (asw)**

**1:08-cv-348 Notice has been electronically mailed to:**

Richard L. Horwitz rhorwitz@potteranderson.com, iplitigation@potteranderson.com, iplitigation2@potteranderson.com, mbaker@potteranderson.com, nmcmenamin@potteranderson.com

David Ellis Moore dmoore@potteranderson.com, ntarantino@potteranderson.com

Daniel M. Silver dsilver@mccarter.com, adupre@mccarter.com, bkrikelis@mccarter.com, gleighton@ngelaw.com, idensmore@mccarter.com, jmuraff@ngelaw.com, leulgen@ngelaw.com, mkelly@mccarter.com

**1:08-cv-348 Notice has been delivered by other means to:**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------------x
SAMSUNG ELECTRONICS CO., LTD.,          :
                                        :
                Plaintiff,              :
                                        :
        v.                              :       C.A. No. 08-348 GMS
                                        :
PETTERS GROUP WORLDWIDE, LLC,           :
POLAROID CORPORATION, and               :
WESTINGHOUSE DIGITAL                    :
ELECTRONICS, LLC,                       :
                                        :
                Defendants.             :
---------------------------------------------------------x
```

## PARTIALLY STIPULATED MOTION FOR EXTENSION OF TIME TO ANSWER OR OTHERWISE PLEAD TO THE COMPLAINT

Defendants Polaroid Corporation ("Polaroid") and Petters Group Worldwide, LLC ("Petters"), hereby jointly[1] request that the Court grant a sixty (60) day extension of time, until August 29, 2008, for Polaroid and Petters to answer or otherwise plead to the Complaint. Plaintiff, Samsung Electronics Co., Ltd. ("Samsung") offers licenses to the four (4) patents alleged in this action against Polaroid and Petters through a patent licensing entity named MPEG LA. (see www.mpegla.com). Polaroid and Petters are currently in licensing negotiations with MPEG LA regarding the four (4) patents at issue in this case, which would also include a license to many other patents, owned by many other companies. Since a license granted to Polaroid and Petters for the four patents at issue in this action would dispose of this case without any further litigation, Polaroid and Petters respectfully request this Court for the aforementioned sixty (60) day extension to attempt to negotiate and execute a license with MPEG LA.

---

[1] Petters is the parent corporation of Polaroid.

Plaintiff, Samsung, only consents to a thirty (30) day extension of time, as well as up to an additional fifteen (15) day grace period after any breakdown of the present settlement discussions, to answer or otherwise plead.  However, Polaroid and Petters believe that an extension of sixty (60) days will more thoroughly allow the parties to explore settlement, will better allow Polaroid and Petters to answer or otherwise plead if settlement discussions do break down, and will prevent the parties from having to come back to the Court to ask for additional time.  Thus, Polaroid and Petters respectfully request that the Court grant a sixty (60) day extension of time, until August 29, 2008, for Polaroid and Petters to answer or otherwise plead to the Complaint.

MCCARTER & ENGLISH, LLP

Dated: June 26, 2008        By:    /s/ Daniel M. Silver
Michael P. Kelly (DE ID# 2295)
Andrew S. Dupre (DE ID# 4621)
Daniel M. Silver (DE ID# 4758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6300 telephone
(302) 984-6399 facsimile
dsilver@mccarter.com

OF COUNSEL:

Lee J. Eulgen (admitted pro hac vice)
James P. Muraff (admitted pro hac vice)
Gregory J. Leighton (admitted pro hac vice)
NEAL, GERBER & EISENBERG LLP
2 North La Salle Street
Suite 2200
Chicago, Illinois 60602
(312) 269-8000

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------x
SAMSUNG ELECTRONICS CO., LTD.,        :
                                      :
                Plaintiff,            :
                                      :
        v.                            :        C.A. No. 08-348 GMS
                                      :
PETTERS GROUP WORLDWIDE, LLC,         :
POLAROID CORPORATION, and             :
WESTINGHOUSE DIGITAL                  :
ELECTRONICS, LLC,                     :
                                      :
                Defendants.           :
--------------------------------------------------------x
```

## ORDER GRANTING EXTENSION OF TIME
## TO ANSWER OR OTHERWISE PLEAD TO THE COMPLAINT

AND NOW, this ___ day of _____ 2008, upon consideration of Defendants

Polaroid Corporation and Petters Group Worldwide, LLC's Partially Stipulated Motion for

Extension of Time to Answer or Otherwise Plead to the Complaint, and for good cause shown:

IT IS HEREBY ORDERED that Defendants Polaroid Corporation and Petters Group

Worldwide, LLC are granted a sixty (60) day extension of time, until August 29, 2008, to answer

or otherwise plead to the Complaint.

_____
The Honorable Gregory M. Sleet